

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

LOUIS McINTOSH,

                    Defendant.

11-Cr-500 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

This action has been remanded to this Court to determine the propriety of formal orders of restitution and forfeiture against defendant Louis McIntosh. Although the parties have reached agreement as to the restitution that McIntosh must pay to the victims of his crimes, he maintains several challenges to the government's proposed order of forfeiture. For the reasons that follow, this Court concludes that none of defendant's objections precludes the entry of the government's proposed order of forfeiture.

In addition, subsequent to the U.S. Court of Appeals for the Second Circuit remanding this action, the U.S. Supreme Court has held that the forfeiture provision for drug crimes does not permit a defendant to be held liable jointly and severally for property derived by his co-conspirators. The question now is whether that holding extends to robbery offenses. This Court has concluded that it does not and therefore an order of joint and several forfeiture liability may be entered in this robbery and firearms action.

I. HISTORY

The Court assumes familiarity with the facts underlying this action, which are set forth more fully in *United States v. McIntosh*, No. 11 Cr. 500, 2014 WL 199515 (S.D.N.Y. Jan. 17, 2014), and *United States v. McIntosh*, 33 F. Supp. 3d 448 (S.D.N.Y. 2014). Briefly stated, McIntosh was convicted after a jury trial in 2013 of nine counts that, taken together, describe a spree of violent robberies and firearm offenses by a group of conspirators led by McIntosh. Defendant and his co-conspirators netted at least $75,000 in cash

and cell phones from these robberies. (*See* Transcript of Sentencing, Dkt. No. 217, at 23–24; Transcript of Trial, Dkt. Nos. 165–79, at 121, 416, 445–47, 866–67, 877, 933–34.) Most of this sum was taken from Frank Flowers and Robert Rizzatti, robbery victims whose own possession of the money in question appeared to derive from activities of dubious legality (gambling and loan sharking, respectively). According to testimony adduced at trial, McIntosh divided the robbery proceeds among himself and the other defendants, using a portion of his own share to buy a BMW 525 automobile. (Trial Tr. at 419–23, 445–48.) A car matching that description was purchased in McIntosh's mother's name for $10,345 in cash and money orders within a week of the robbery of Rizzatti. (*See id.* at 422–23, 458, 559–61, 1044–45; Sentencing Tr. at 24.) The government seized the BMW in 2011 and has stored it at the Westchester County Department of Public Safety since that time. (Transcript of Oral Argument dated July 14, 2017, Dkt. No. 272, at 14.)

On May 23, 2014, this Court sentenced McIntosh to a term of imprisonment of 720 months, followed by three years of supervised release. The Court also orally imposed restitution in the sum of $75,000 and directed forfeiture of $75,000 and the BMW, which the Court found on the record to be the fruits of the crimes.[1] (Sentencing Tr. at 32–33.) The Court set forth those provisions in the resulting judgment. (Judgment in a Criminal Case, Dkt. No. 215, at 5–6.)

In what the government now admits was "a mistake," it did not submit a preliminary order of forfeiture to the Court at or before sentencing, as required by Federal Rule of Criminal Procedure 32.2(b). (Argument Tr. at 16.) Nor did the government submit an order of restitution or a list of the amounts due to particular victims within sixty days of sentencing, as directed by the Court at sentencing. (Sentencing Tr. at 32.)

Of course, McIntosh did not lack for notice of the government's plan to pursue the proceeds of his crimes. At the initiation of the prosecution in 2011, the indictment included an allegation that the defendants "shall forfeit

---

[1] Although the written judgment referred to forfeiture of "$75,000 *and* a BMW" (emphasis added), a more precise enumeration of the forfeited property is "a BMW and $75,000, with a credit for the net proceeds of the government's sale of the seized BMW," because the BMW itself was bought using money from the robberies. The parties have agreed to this refinement. (Argument Tr. at 40–41.)

2

to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses," or substitute assets if they dissipated these proceeds. (Dkt. No. 2 at 7.) In 2012, the government's bill of particulars further specified the government's intent to seek forfeiture of the specific BMW purchased with a portion of those proceeds. (Dkt. No. 83.) And testimony at trial substantiated that purchase, along with robbery proceeds of at least $75,000. *Cf. United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011) ("The calculation of forfeiture amounts is not an exact science. [T]he court need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." (internal quotation omitted)). At sentencing, the Court directed the government to provide a formal order of forfeiture for the $75,000 and the BMW within one week as well as the schedule of victims for restitution within sixty days, as set forth above. (Sentencing Tr. at 32–33.) The government failed to submit either of these documents until this matter was remanded on the government's motion to correct those errors, two and one half years after sentencing.

McIntosh's sentence and the Court's accompanying instructions were memorialized in the "Judgment in a Criminal Case" dated May 28, 2014.[2] (Dkt. No. 215.) McIntosh appealed and the government cross-appealed from the judgment. (*See* Dkt. Nos. 216, 219.) On the government's unopposed motion for remand, the Second Circuit remanded this matter to this Court pursuant to the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), instructing that "[o]n remand, if [the government] wishes to pursue restitution and forfeiture, the Government shall provide the district court with a victim list and request entry of formal orders of restitution and forfeiture," and indicating that this Court "may, in accordance with Federal Rule of Criminal Procedure 36, amend the written

---

[2] The judgment mistakenly referred to the amount of forfeiture as being "$95,000," rather than the $75,000 orally directed at sentencing. However, "[i]t is clearly established in this Circuit that '[i]t is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence.'" *United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 1995) (quoting *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974)). The parties agree this was a clerical error. (*See* Argument Tr. at 9.)

3

judgment so that it conforms with the oral sentence pronounced by the court." (Dkt. No. 245 (internal quotation omitted).)

On remand, the parties ultimately agreed to a schedule of victims and a restitution amount of $4,598. The reduction in restitution from $75,000 to $4,598 is explained essentially by the fact that the victims Flowers and Rizzatti have decided not to seek restitution for their losses. As a result, the Court will sign the agreed-upon order of restitution and amend the judgment to reflect the new restitution amount.

Although the parties now agree regarding restitution, they do not agree as to forfeiture. McIntosh has raised a series of challenges to the amount and timing of the proposed forfeiture order submitted by the government. This Opinion now addresses those arguments.

## II. DISCUSSION

### A. Joint and Several Liability

McIntosh's first challenge to the proposed amount of forfeiture rests on a recent decision by the Supreme Court, *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). In that case, the Supreme Court held that the forfeiture provision for drug crimes, found at 21 U.S.C. § 853, does not permit a defendant to be held jointly and severally liable for property derived by his co-conspirators from the crime. McIntosh now argues that that decision compels the limitation of his own forfeiture to the value of the property that he *personally* obtained from his crimes, which is substantially less than the total amount of proceeds the conspirators obtained from the robbery conspiracy. (Dkt. No. 264 at 4–5.)

But the statutory basis for forfeiture here is not 21 U.S.C. § 853; it is 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. Given the Supreme Court's narrow holding in *Honeycutt* and the distinctions between *Honeycutt* and this case in statutory text and structure, this Court determines that that case has not altered longstanding Second Circuit precedent that permits McIntosh to be held liable for the forfeitable proceeds of the conspiracy jointly and severally with his co-conspirators.

### 1. *The Statute in* Honeycutt: *21 U.S.C. § 853.*

21 U.S.C. § 853(a) – the statute at issue in *Honeycutt* – provides for criminal forfeiture of the following three categories of property involved in drug manufacturing and distribution crimes:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The text of Section 853 does not elucidate whether joint and several liability is available for forfeiture. Since Congress enacted the provision, however, all but one of the several courts of appeals to reach the question arrived at the same answer: yes. *See Honeycutt*, 137 S. Ct. at 1631 & n.1 (collecting cases).

The Supreme Court reached the opposite result in *Honeycutt*, finding joint and several liability "inconsistent with the statute's text and structure," as well as its legislative history. *Id.* at 1630, 1635. Justice Sotomayor's opinion for a unanimous Court found this inconsistency between permitting joint and several liability, on one hand, and the text of the statute, on the other hand, "most clear" in the text of Section 853(a)(1). In that provision, the verb "obtained" in its ordinary meaning referred to something brought into one's personal possession or use – not "property that was acquired by someone else." *Honeycutt*, 137 S. Ct. at 1632. The references to "the person's property" and "his interest in" a criminal enterprise, under the other two prongs of Section 853(a), reinforced that conclusion. More generally, the Supreme Court read the combined provisions of Section 853(a) to limit forfeiture to "tainted property; that is, property flowing from, or used in, the crime itself." *Id.* (citations omitted). Joint and several liability would run afoul of both those restrictions,

5

allowing the government to reach beyond the property personally obtained by the defendant being sentenced – because a co-conspirator had obtained it instead – and beyond the tainted proceeds of the crime – because, if the co-conspirator had retained his ill-gotten gains, the defendant being sentenced would have to pay the difference out of untainted assets from his own pocket.

The Supreme Court secured further support from three other portions of Section 853 underscoring the limitation to tainted property: (1) Section 853(c), providing that the government's title to the property vests only upon the commission of the offense; (2) Section 853(e)(1), permitting pretrial freezes only of property shown to have a connection to the underlying crime; and (3) Section 853(d), establishing a rebuttable presumption of forfeiture for property acquired by the defendant "during the period of the violation" with "no likely source for such property other than the violation." *Honeycutt*, 137 S. Ct. at 1633. Interpreting Section 853(a) to allow joint and several liability would also render redundant Section 853(p)'s narrower allowance for forfeiture of "substitute property" in limited circumstances when the defendant dissipates the original, tainted assets. *Id.* at 1634. For its part, the government pointed to Section 853(o)'s direction that the statute be "liberally construed to effectuate its remedial purposes." But the Court rejected that exhortation as insufficient to overcome the "plain text" at issue. *Id.* at 1635 n.2.

Finally, the Supreme Court rejected joint and several liability under Section 853 as inconsistent with the history of forfeiture in general and of that provision in particular. The historical nature of forfeiture as an *in rem* proceeding suggested that it would apply only to tainted assets unless Congress specifically provided otherwise, and the statute's legislative history "confirm[ed]" that Congress intended to effect only technical improvement of forfeiture proceedings, not a "significant expansion of the scope of property subject to forfeiture." *Id.* at 1635.

### 2. *The Statutes Here: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.*

The government seeks forfeiture here pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, not 21 U.S.C. § 853. (S3 Indictment, Dkt. No. 59, at 10–11.) 18 U.S.C. § 981(a)(1)(C) renders forfeitable "[a]ny property, real or personal, which constitutes or is derived from proceeds

6

traceable to a violation" of specified provisions of Title 18. In this statute, unlike in 21 U.S.C. § 853, "proceeds" is a defined term. Trebly defined, in fact: 18 U.S.C. § 981(a)(2) provides distinct definitions for three categories of offenses. As relevant to McIntosh, Section 981(a)(2)(A) provides:

> In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

### 3. *These Statutes' Text and Structure Differ Materially.*

The language of Section 853 has some similarities to the statutes here. First, the use of the verb "obtained" – in the definition of "proceeds" and in other subsections of Section 981 – resembles the language in Section 853(a)(1) that the Supreme Court in *Honeycutt* found "most clear[ly]" to limit forfeiture to personal liability. Second, the requirement that property be "traceable to a violation" calls to mind Section 853's restriction to "tainted" property. That inference is strengthened by Section 981(f)'s provision that the government's right to the property "shall vest . . . upon commission of the act giving rise to forfeiture" – i.e., the offense – just as in Section 853(c).

On the other hand, there remain significant material differences between Section 981 and the statute at issue in *Honeycutt*. The word "person," on which the Supreme Court placed significant weight in *Honeycutt*, does not appear in the operative provisions of Section 981(a). Conversely, the expansive term "traceable," used numerous times in Section 981 to characterize forfeitable property, has no analog in the narrower language of Section 853. Indeed, the text of the provision the government seeks to apply against McIntosh – "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation," in Section 981(a)(1)(C) – is self-evidently broader and less focused on personal possession than "any property constituting, or derived from, any proceeds *the person* obtained, directly or indirectly, as the result of such violation," in Section 853(a)(1) (emphasis added).

7

### 4. *Second Circuit Precedent Mandates Joint and Several Liability Under Section 981.*

This case does not arise on a blank slate, however. The Second Circuit has consistently read Section 981 to provide joint and several liability for forfeiture orders against co-conspirators. *E.g.*, *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012); *United States v. Viloski*, 814 F.3d 104, 108 & n.2 (2d Cir. 2016); *United States v. Mandell*, 752 F.3d 544, 554 (2d Cir. 2014) (per curiam). When doing so, it has anchored its reasoning firmly in the specific text of Section 981.

In *United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012), for example, the court analyzed an order of criminal forfeiture pursuant to Section 981(a)(1)(C), the same provision at issue here. For defendants such as the one in *Contorinis*, who was convicted of securities fraud rather than robbery, the statute provides a more lenient definition of "proceeds": "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). The Second Circuit noted that "the statute does not expressly identify the 'whom' that must do the acquiring that results in forfeiture," but the court inferred, from the *in personam* nature of criminal forfeiture and its underlying principles, that the defendant must be the one who acquired the proceeds. *Contorinis*, 692 F.3d at 146. And yet, "[t]his general rule is somewhat modified by the principle that a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant." *Id.* at 147.

The court did not endorse joint and several liability as a freestanding common law principle or a transplant from the Section 853 context, however. Instead, it justified the doctrine using the specific text of Section 981(a)(2)(B) in the following words:

> The extension of forfeiture to proceeds received by actors in concert with a defendant may be deemed to be based on the view that the proceeds of a crime jointly committed are within the possessory rights of each concerted actor, i.e. are "acquired" jointly by them and distributed according to a joint decision. . . . [T]he property must have, at some point, been under the defendant's control or the

8

control of his co-conspirators in order to be considered "acquired" by him."

*Id.*

The Second Circuit in *United States v. Torres*, 703 F.3d 194 (2d Cir. 2012), offered a similarly careful textual reading of the provision applicable to McIntosh, Section 981(a)(2)(A). As in *Honeycutt*, the *Torres* court acknowledged that the dictionary defined "obtain" with reference to personal possession, but it cautioned that "in assessing whether Torres 'obtained' fungible proceeds subject to forfeiture under § 981, we may not read the word in isolation; we must consider it in light of its modifiers and the language of the rest of the statute." *Torres*, 703 F.3d at 199. And the statute here not only contains the broad modifier "directly or indirectly," but "further reaches (and 'is not limited to') 'net gain or profit,' and property 'traceable' to the property that was obtained by the defendant as a result of the offense." *Id.* The Second Circuit concluded that the text of Section 981(a)(2)(A) "suggests Congress's desire to encompass not only the very property that was unlawfully obtained. Rather, the forfeiture statute envisions and tolerates some attenuation of the chain of events between the crime and the related property or gain it makes subject to forfeiture." *Id.*

Once again, this was no offhand extension of precedent, but a clear-eyed interpretation of the statute at hand, for the court wrote that although it "recognize[d] the dangers inherent in too broad a reading of the forfeiture statutes[, t]he construction [it] offer[ed] here is textually driven." *Id.* at 202 (citation omitted).

*Torres* offers further indication that the Second Circuit's body of law interpreting Section 981 rests on textual ground distinct from, and stronger than, 21 U.S.C. § 853, the statute at issue in *Honeycutt*. *Cf. United States v. Seabrook*, 661 F. App'x 84, 86 (2d Cir. 2016) (summary order) ("Section 981(a)(1)(C) does not contain the language in § 853(a) relied on by Seabrook, *i.e.*, the forfeiting of 'any proceeds the person obtained' or 'any of the person's property.' The language in § 981 is much broader . . . ." (citation omitted)).

9

### 5. Honeycutt *Did Not Overrule the Prior Second Circuit Case Law Interpreting Section 981.*

As to the well-developed case law in this and other circuits providing for joint and several liability under Section 981 and other criminal forfeiture provisions scattered throughout the U.S. Code, the unanimous Supreme Court in *Honeycutt* said not a word. That was not for lack of notice. The government discussed those precedents in its submissions before the Court at both the certiorari and merits stages. Academic commentators on joint and several liability have not shied from addressing the various statutory bases for forfeiture. *See, e.g.*, 2 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 13.02[5] (2017).

In writing, however, the Supreme Court meticulously avoided mention of any forfeiture statute apart from Section 853. In fact, both when the Court in *Honeycutt* framed the question presented and when it expressly announced its holding, it wrote in terms strictly limited to the words of Section 853. Justice Sotomayor wrote that the issue to be decided was "whether, under § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." She concluded that "such liability is inconsistent with the statute's text and structure." 137 S. Ct. at 1630; *see also id.* at 1632. That careful judicial craftsmanship speaks volumes.

A precedential decision by the Second Circuit remains binding on this Court "unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [the court of appeals] *en banc.*" *In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000) (per curiam) (internal quotation omitted). What the Supreme Court emphatically did not do in *Honeycutt* is overrule the Second Circuit's Section 981 cases, which rest on specific textual grounds distinguishable from Section 853. This Court therefore remains bound by the Second Circuit's repeated holdings that Section 981(a)(1)(C) allows joint and several liability for criminal forfeiture. *E.g., United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012); *United States v. Viloski*, 814 F.3d 104 (2d Cir. 2016); *United States v. Mandell*, 752 F.3d 544 (2d Cir. 2014) (per curiam).

What is more, where such forfeiture is available, it is required. 28 U.S.C. § 2461(c) commands that "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court *shall* order the forfeiture of the property" (emphasis added). *See Torres*, 703 F.3d at 204 ("[T]he court's

orders of forfeiture and restitution were mandatory under the statutes applicable here."). For the reasons stated, McIntosh must forfeit the value of the proceeds traceable to the crime, even those that now rest in the hands of his co-conspirators.

### B. Valuation of Depreciable Assets

McIntosh argues next that, to the extent forfeiture is allowed, the government should bear the loss of any decline in value of the forfeited BMW in the interval between its seizure in 2011 and the government's forthcoming sale of the vehicle. (Dkt. No. 256 at 10–11.) As noted, the government has already agreed that the amount of money due under the forfeiture order will be reduced by the value of the BMW, as it should be. McIntosh cites no authority for his argument that this offset should be calculated on any other basis than the net proceeds at the time of sale. Further, he offers no evidence that the automobile has in fact lost significant value while in the government's custody.

McIntosh's best argument relies on 19 U.S.C. § 1612, a customs provision brought to bear on this case by a serpentine strand of statutory cross-references,[3] which instructs in mandatory terms that the government "*shall* proceed *forthwith* to advertise and sell" certain seized assets at risk of depreciation (emphases added). But the statute expressly conditions that command on a discretionary finding: the duty to sell forthwith applies "[w]henever it appears to the Customs Service" – or here, the Department of Justice – that the seized property "is liable to perish or to waste or to be

---

[3] 28 U.S.C. § 2461(c) incorporates the procedures of 21 U.S.C. § 853 into these criminal forfeiture proceedings; 21 U.S.C. § 853(j) commands that "[e]xcept to the extent that they are inconsistent with the provisions of this section, the provisions of section 881(d) of this title shall apply to a criminal forfeiture under this section"; Section 881(d) in turn provides that the "provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws . . . shall apply to seizures and forfeitures . . . under any of the provisions of this subchapter, . . . except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General"; and 19 U.S.C. § 1612 – the provision relied on by McIntosh – is one of the customs provisions incorporated by Section 881(d) into forfeitures. *See United States v. 414 Kings Highway*, 128 F.3d 125, 127 & n.2 (2d Cir. 1997).

greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof." 19 U.S.C. § 1612(a). That threshold determination has not been made here. On the contrary, the government avers that the BMW "remains in workable condition" at the Westchester County Department of Public Safety, (Argument Tr. at 14), and McIntosh offers no evidence to controvert that assessment.

Moreover, McIntosh cites no decision applying Section 1612 to reduce the forfeiture amount, as he urges, and such an interpretation sits uneasily with Supplemental Rule G(7)(b) of the Federal Rules of Civil Procedure. That rule, made applicable to this case by Federal Rule of Criminal Procedure 32.2(b)(7), allows a court to order an interlocutory sale of seized property so as to prevent its "deterioration, decay, or injury by being detained in custody pending the action." If McIntosh were concerned about a sharp decline in value of the seized vehicle, he could have moved for its interlocutory sale at any time after the 2011 indictment – or at the very least, after the 2012 bill of particulars specifically targeted the BMW for forfeiture.

This Court does not condone the haphazard way in which the government has prosecuted its forfeiture allegation against McIntosh over the past six years. However, where, as here, defendant has not moved for an interlocutory sale of the seized automobile, and has presented no evidence of any significant decline in its value, the Court declines to reduce the amount of forfeiture to account for post-seizure depreciation of the BMW he purchased with the cash proceeds of his armed robberies.

### C. Timeliness of Forfeiture Order

Finally, McIntosh contends that the government's failure to timely submit a forfeiture order at sentencing pursuant to Federal Rule of Criminal Procedure 32.2 bars the Court from entering an order of forfeiture three years after sentencing. However, under the reasoning of *Dolan v. United States*, 560 U.S. 605, 611 (2010), the failure of the government to submit an order of forfeiture and of the Court to enter a forfeiture order at sentencing "does not deprive the court of the power to order" forfeiture later. Although *Dolan* explicitly addressed the power to issue an untimely order of restitution – not forfeiture – the mass of authority in the lower courts has persuasively interpreted its logic to extend to forfeiture as well.

Here, where McIntosh was on notice at and before sentencing of the government's intention to seek forfeiture, and the subsequent delay caused him no prejudice, the missed deadlines in the Federal Rules raise no bar to the entry of a formal order of forfeiture at this time.

### 1. *Rule 32.2's Deadlines Were Not Met.*

McIntosh contends that the government's failure to comply with the rules governing the entry of a forfeiture order at the time of his sentencing precludes the entry of such an order now, some three years later. Federal Rule of Criminal Procedure 32.2 prescribes a detailed timeline for the imposition of a sentence of criminal forfeiture. Once the government provides notice in the indictment of its intent to seek forfeiture pursuant to Rule 32.2(a), the Court must determine what property is forfeitable "[a]s soon as practical after a verdict," *id.* 32.2(b)(1)(A), and "promptly" enter a preliminary order of forfeiture for that property, *id.* 32.2(b)(2)(A). Specifically, "[u]nless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant [at sentencing] under Rule 32.2(b)(4)." *Id.* 32.2(b)(2)(B). At sentencing, "[t]he court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture," and "must also include the forfeiture order, directly or by reference, in the judgment." *Id.* 32.2(b)(4)(B).

Here, although the indictment's forfeiture allegation provided the initial notice required by Rule 32.2(a), the government never submitted a proposed preliminary order pursuant to 32.2(b)(2)(A) – let alone "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final." Nor does the government assert any "impracticality" or other excuse for its noncompliance. (*See* Dkt. No. 262 at 9–10; Argument Tr. at 16–17.) Further, although the Court orally "determine[d] what property is subject to forfeiture" and included the penalty in its announcement of the sentence and in the judgment, as required by Rule 32.2(b)(1) and 32.2(b)(4)(B), the government failed to submit an order of forfeiture pursuant to Rule 32.2(b)(4)(A) either at sentencing, or in the week thereafter, despite being directed to do so by the Court. (*See* Sentencing Tr. at 24, 33.)

13

### 2. *These Errors Do Not Deprive the Court of Power to Enter an Untimely Order of Forfeiture.*

But the Federal Rules do not specify the consequences of failing to comply with the deadlines set forth in Rule 32.2. The Supreme Court's decision in *Dolan v. United States*, 560 U.S. 605 (2010), supplies a tripartite framework by which to determine the effects of such time limits. At one extreme, a "jurisdictional" deadline "prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute." *Id.* at 610. Other time limits are "more ordinary 'claims-processing rules'" that lack automatic fatal effect: "[u]nless a party points out to the court that another litigant has missed such a deadline, the party forfeits the deadline's protection." *Id.* Finally, the weakest category of deadline is a "time-related directive," something "that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Id.* at 611 (citing, inter alia, *United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990)).

In *Dolan*, the Supreme Court held that the ninety-day post-sentencing period within which to enter an order of restitution prescribed by the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3664(d)(5), was a "time-related directive" within the third and most lenient category above – and hence, that a sentencing court's failure to meet it "does not deprive the court of the power to order restitution." *Dolan*, 560 U.S. at 611. Justice Breyer's majority opinion identified six considerations in "the language, the context, and the purposes of the statute" that supported this conclusion: (1) the absence of any specified consequence for noncompliance; (2) the statute's primary emphasis on the substantive purpose of helping crime victims; (3) the reinforcement of that purpose by the procedural deadline at issue; (4) the perversity of the result that a strict application of the time limit would hurt the victims who are the statute's intended beneficiaries; (5) the Supreme Court's previous interpretation of "similar statutes similarly"; and (6) the ability of most defendants to mitigate any harm by alerting the court to the deadline's approach (or, if needed, by seeking a writ of mandamus). *Id.* at 611–16.

The Second Circuit has not yet considered the application of *Dolan* to the procedural rules governing criminal forfeiture.[4] But the Supreme Court's broad framing of its decision – "[t]his case concerns the remedy for missing a statutory deadline," 560 U.S. at 607 – makes clear that its framework is applicable beyond the specific context of the MVRA. Importantly, every circuit to address the forfeiture issue head-on since *Dolan* has concluded that the deadlines in Rule 32.2 fall in the forgiving category of "time-related directives." *See United States v. Farias*, 836 F.3d 1315, 1330 (11th Cir. 2016); *United States v. Davies*, 601 F. App'x 97, 100 (3d Cir. 2015); *United States v. Williams*, 720 F.3d 674, 702 (8th Cir. 2013); *United States v. Schwartz*, 503 F. App'x 443, 447 (6th Cir. 2012); *United States v. Martin*, 662 F.3d 301 (4th Cir. 2011).[5] Other courts in this District have reached the same conclusion. *See United States v. Reese*, 36 F. Supp. 3d 354, 365 (S.D.N.Y. 2014); *United States v. Vilar*, No. 05 CR 621 RJS, 2010 WL 3447222 (S.D.N.Y. Aug. 26, 2010).

As the U.S. Court of Appeals for the Fourth Circuit persuasively explains in *United States v. Martin*, 662 F.3d 301, 308–10, the *Dolan* factors point in the same direction for forfeiture as they do for restitution. As in the MVRA, Rule 32.2 imposes mandatory deadlines but specifies no consequence for letting them lapse; in such cases "federal courts will not in the ordinary course impose their own coercive sanction." *Dolan*, 560 U.S. at 611 (quoting

---

[4] The government's position here may find indirect support in *United States v. Mandell*, 752 F.3d 544 (2d Cir. 2014) (per curiam), which rejected a challenge to the government's failure to enter a preliminary order in advance of sentencing as required by Rule 32.2(b). Because the defendant had not raised his objection before the district court, the Second Circuit applied plain error review pursuant to Federal Rule of Criminal Procedure 52(b). *Mandell*, 752 F.3d at 553. The court's application of the plain error standard at least implies that Rule 32.2(b)'s preliminary order deadline is *not* a "jurisdictional" bar under *Dolan*'s three-part framework – because it if were, it could not have been waived below. *See Dolan*, 560 U.S. at 610 (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008)); *United States v. Edwards*, 834 F.3d 180, 191 (2d Cir. 2016) (jurisdictional defect would merit de novo review).

[5] The chorus is not quite unanimous: in *United States v. Shakur*, 691 F.3d 979, 988 n.6 (8th Cir. 2012), the U.S. Court of Appeals for the Eighth Circuit dropped a footnote to express its "reluctan[ce]" to extend *Dolan*'s holding to Rule 32.2, "[a]lthough the issue is not before us" – a manifest admission of dictum. A later panel of the Eighth Circuit expressly distinguished *Shakur*'s dicta and designated another forfeiture deadline, in Rule 32.2(b)(5)(A), a "time-related directive" under *Dolan*'s framework. *See Williams*, 720 F.3d 674 at 700–02.

15

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)). The underlying purpose of criminal forfeiture is not to protect defendants but "to punish the offender" by forcing "the disgorgement . . . of his ill-gotten gains." *United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012) (internal quotations omitted). The Supreme Court's admonition to interpret "similar statutes similarly" (i.e., here, loosely), as well as the ability of defendants to mitigate any harm by objecting at or after sentencing, also militate against an "ironclad" jurisdictional reading of Rule 32.2's time limits.

It is true, as the dissenting judge noted in *Martin*, that Rule 32.2, in the context of forfeiture, does not place the same "weight" on the interests of victims that the MVRA does in the context of restitution. 662 F.3d at 313–14 (Gregory, J.,s concurring in part and dissenting in part). But such concerns still remain potent in this context. The Advisory Committee Notes explain that Rule 32.2(b)'s forfeiture procedures, while designed in part to ensure notice to the defendant, also serve to protect the rights of third parties who may have claims to the offender's property. Just as the recipients of restitution under the MVRA, these blameless beneficiaries would be perversely punished by a procrustean application of the procedural safeguards erected in their name. So too would the victims of the crime, confidential informants, and other "innocent persons," to whom the government is authorized to remit forfeited proceeds in the interest of justice. *See* 21 U.S.C. § 853(i). As in *Dolan*, the gravity of these third-party interests provides a "strong indication" that the drafters of the forfeiture deadlines did not intend criminal defendants to reap a windfall from the government's or court's delay. 560 U.S. at 614.

### 3. *McIntosh Received Ample Notice of Forfeiture.*

The Supreme Court cabined the reach of its decision in *Dolan* to cases in which the defendant receives advance notice of the restitution penalty: "We hold that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution – at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." 560 U.S. at 608; *see also id.* at 620.

Here, the fact that the government was seeking and the Court was ordering forfeiture was pellucidly clear to defendant. McIntosh knew the government sought forfeiture of his robbery proceeds from the time he saw

16

the 2011 indictment; he received notice of the specific personal property sought in the 2012 bill of particulars and the 2013 trial, (Trial Tr. at 422–23, 458, 559–61); the final amount of forfeiture was found on the record by the Court at the 2014 sentencing, (Sentencing Tr. at 33), and specified in the resulting judgment, (Judgment at 7). Defendant received, and has made use of, ample opportunity to challenge the government's proposed forfeiture before this Court. (*See* Sentencing Tr. at 24–25.)

For that reason, McIntosh's citations to *United States v. Westmoreland*, No. 3:10-CR-68 JCH, 2010 WL 5441976 (D. Conn. Dec. 28, 2010), and *United States v. Shakur*, 691 F.3d 979, 988–89 (8th Cir. 2012), are inapposite. This is not a case in which the gross violations of sentencing procedure denied the defendant any meaningful opportunity to contest an untimely forfeiture order, as in *Shakur*, or where the government and court entirely failed to address forfeiture at the sentencing hearing, as in *Westmoreland*.

Indeed, the Court's oral sentence left no substantive aspect of the forfeiture unfixed or in doubt. *Cf. United States v. Yeje-Cabrera*, 430 F.3d 1, 15 (1st Cir. 2005) ("[T]he portion of Rule 32.2 which was violated here is largely a housekeeping rule and does not itself go to any fundamental rights of defendants."); *United States v. Bennett*, 423 F.3d 271, 281–82 (3d Cir. 2005) ("purely administrative" procedural lapse in ordering forfeiture "is for all practical purposes tantamount to a mere clerical error").

### 4. *McIntosh Suffered No Cognizable Prejudice From the Forfeiture Order's Untimeliness.*

The Supreme Court also posited in *Dolan* that the judicial inquiry into a deadline's consequences could take into account the prejudice that delay causes an individual defendant – such as any loss of evidence necessary to challenge or appeal the forfeiture amount. 560 U.S. at 617. But the only prejudice McIntosh alleges is a purported decline in value of the forfeited BMW since its seizure. (Dkt. Nos. 256 at 10, 264 at 3.) As described above, defendant's argument on this point lacks factual and legal support. McIntosh presents no evidence to rebut the government's affirmation that the vehicle remains in working condition and he presents no evidence of any value it may have lost. Nor does he offer authority for the proposition that a decline in value would amount to legally cognizable prejudice, when he had the ability throughout to seek an interlocutory sale of the BMW. *See, e.g., United States v. Gushlak*, 728 F.3d 184, 191–92 (2d Cir. 2013); *United States*

v. *Qurashi*, 634 F.3d 699, 705 (2d Cir. 2011) (applying *Dolan* to reject challenges to delayed restitution, where the defendants asserted prejudice without evidentiary support).

The failure to observe the procedural niceties of Rule 32.2 in this case did not prejudice McIntosh so as to deprive this Court of power to order forfeiture at this time. *See Schwartz*, 503 F. App'x at 449; *Bennett*, 423 F.3d at 282.[6]

## III. CONCLUSION

As this Court has previously observed, Louis McIntosh is a violent, felonious predator. *See United States v. McIntosh*, No. 11 Cr. 500, 2014 WL 199515, at *10 (S.D.N.Y. Jan. 17, 2014). But he is also a defendant deserving of even-handed and informed dispensation of justice. For the reasons set forth in this Opinion, the Court will enter the proposed orders of restitution and forfeiture submitted by the government and will file an amended judgment to reflect the proper forfeiture amount of $75,000 and its relationship to the seized BMW as well as restitution of $4,598.

Dated: New York, New York
August 8, 2017

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.

---

[6] In addition to the three primary arguments addressed above, McIntosh also contends that the Fifth and Sixth Amendments raise impediments to the imposition of restitution and forfeiture: he demands first that the exact amount of restitution and forfeiture be specified in the indictment and charged to a jury, and second that that amount be proved beyond a reasonable doubt. (Dkt. No. 256 at 1–4.)

However, controlling precedent from the Second Circuit forecloses McIntosh's constitutional challenges to both these penalties. *See United States v. Stevenson*, 834 F.3d 80, 85–86 (2d Cir. 2016) (forfeiture); *United States v. Bengis*, 783 F.3d 407, 411–12 (2d Cir. 2015) (restitution). McIntosh concedes that authority and states that he raises these arguments simply to preserve them for appeal in the event the law changes. (Dkt. Nos. 256 at 3–4, 264 at 1.)